# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEREMY R. B.,**[1]

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:22-cv-2452
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Jeremy R. B., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 11); the Commissioner's Memorandum in Opposition (ECF No. 14); and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

## I. BACKGROUND

This is related to Plaintiff's third set of benefits applications. The record indicates that Plaintiff filed a first set DIB and SSI applications in June 2018 that were denied at the initial application level on October 24, 2018. (R. 15.) Plaintiff thereafter filed a second set of DIB and

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

SSI applications that were also denied at the initial application level on March 12, 2019. (R. 16, 825.) It does not appear that Plaintiff pursued administrative or judicial review after those sets of applications were denied.

Plaintiff protectively filed the instant DIB and SSI applications in November 2019, and after initially alleging a November 1, 2016 onset date, he successfully moved for an amended onset date of April 23, 2018. (R. 15, 250.) Those applications were denied at the initial and reconsideration levels, and a telephonic hearing was held on April 8, 2021, before an Administrative Law Judge ("the ALJ"), who issued an unfavorable determination on May 21, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review on April 8, 2022.

Plaintiff seeks judicial review of that final determination. He submits that remand is warranted for several reasons. First, Plaintiff contends that the ALJ erred by failing to find that his paresthesia constituted a medically determinable impairment. (Pl.'s Statement of Errors 9–11, ECF No. 11.) Plaintiff also contends that the ALJ erred by violating agency procedures for hearings as set forth in the Hearings, Appeals, and Litigation Manual ("HALLEX"). (*Id*. at 4–6.) Plaintiff further contends that the ALJ erred at step five by mischaracterizing testimony from a vocational expert ("VE"). (*Id*. at 7–8.) Finally, Plaintiff contends that the ALJ erred by failing to explain why he incorporated into Plaintiff's residual functional capacity[2] ("RFC") a 15 percent time off task-limitation. (*Id*. at 8–9.) Defendant correctly maintains that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 10–13, ECF No. 14.)

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

## II. THE ALJ'S DECISION

The ALJ issued his decision on May 21, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–36.) The ALJ initially explained that the period from April 23, 2018, through March 12, 2019, had already been adjudicated as a result of Plaintiff's prior benefits applications, and consequently, the earliest possible onset date that the he could consider was March 13, 2019. (R. 18.)[3] The ALJ further explained that for purposes of Plaintiff's DIB application, Plaintiff met the insured status requirements through December 31, 2020. (*Id.*) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff not engaged in substantial gainful activity since April 23, 2018. (*Id.*) At step two, the ALJ found that

---

[3] The ALJ denied Plaintiff's motion to reopen his prior applications. (R. 18, 327–35.) Plaintiff does not challenge that determination.

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1. Is the claimant engaged in substantial gainful activity?

  2. Does the claimant suffer from one or more severe impairments?

  3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

  4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

  5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff had the following severe, medically determinable impairments: cerebral aneurysm/arteriovenous malformation; affective disorder; anxiety disorder; headaches; and seizure disorder. (*Id.*) At step three, the ALJ further found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (R. 19.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) within the following parameters: He can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for up to six hours day and he can stand and/or walk for up to six hours in an eight-hour day. The claimant must alternate from sitting to standing and/or walking for two to three minutes after every hour, and must alternate from standing and/or walking to sitting for two to three minutes after every half-hour, but always with capacity to remain on task during all position changes, some of which would be covered by time off task and typical work breaks. The claimant can occasionally operate hand or foot controls. The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance (meaning navigate uneven terrain) and stoop, but never kneel, crouch, or crawl. The claimant can never work at unprotected heights, in proximity to moving mechanical parts of dangerous machinery, or operate a motor vehicle. He can occasionally work in weather, humidity, wetness, dusts, odors, fumes, and pulmonary irritants. He can never work in extreme cold, extreme heat, vibration, or louder than moderate noise. The claimant should not be exposed to flashing, glaring, or strobing lights, although he can endure typical office fluorescent lights without restriction. The claimant cannot perform complex tasks or work at a high production rate or fast pace. He can occasionally interact with supervisors, coworkers, and the public, but cannot perform teamwork or customer service type work. He is able to tolerate no more than a few changes in a routine work setting defined as he should not be expected to perform new and unfamiliar tasks as primary work duties without orientation (i.e., he is not a self-starter). The claimant will be off task 15 percent of the workday in addition to normal work breaks in an eight-hour day.

(R. 22.)

At step four, the ALJ relied on VE testimony to determine that Plaintiff had no past relevant work. (R. 28.) At step five, the ALJ again relied on VE testimony to determine that in light of his age, education, work experience, and RFC, jobs existed in significant numbers in the

national economy that Plaintiff could perform including the representative occupations of shipping and receiving clerk, mail sorter, and folder. (*Id*.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 1, 2016, through the date of the decision. (R. 30.)

### III.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA

fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As previously explained, Plaintiff argues that the ALJ erred by failing to find that his paresthesia constituted a medically determinable impairment at step two; violating hearing procedures set forth in HALLEX; mischaracterizing the VE's testimony at step five; and failing to explain why a 15 percent time off task limit was incorporated into Plaintiff's RFC. Each of these contentions of error are addressed; all are found lacking in merit.

### A. Plaintiff's Paresthesia

Plaintiff contends that the ALJ erred by failing to find that his paresthesia constituted a medically determinable impairment at step two. (Pl.'s Statement of Errors 9–11, ECF No. 11.) This contention lacks merit.

At step two, an ALJ must consider whether a claimant's alleged impairments constitute "medically determinable" impairments—*i.e.*, impairments that result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. To be classified as "medically determinable," impairments must also meet the durational requirement in 20 C.F.R. § 404.1509, which provides that "[u]nless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months." "Where the claimant is applying for DIB, 'the 12-month period may be any period of 12 months, so long as the period starts prior to the expiration of the claimant's insured status. The only requirement is that the 12 months must be consecutive.'" *Bentschneider v. Comm'r of Soc. Sec.*, No. CV 16-

12038, 2017 WL 1505120, at *5 (E.D. Mich. Apr. 7, 2017), *report and recommendation adopted*, No. 16-CV-12038, 2017 WL 1476900 (E.D. Mich. Apr. 25, 2017) (quoting Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 2:6 (2017 ed.)); *see also Lyons v. Soc. Sec. Admin.*, No. 00-5361, 19 F. App'x 294, 300 (6th Cir. Sept. 13, 2001).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. § 404.1521. A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If a claimant has at least one severe medically determinable impairment, an ALJ must consider the limiting effects of all a claimant's medically determinable impairments, severe and not, when assessing a claimant's RFC. 20 C.F.R. § 404.1523.

Plaintiff bears the burden of proving that an impairment is medically determinable at step two. The United States Court of Appeals for the Sixth Circuit has explained, however, that the step two inquiry is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, a claimant's burden at step two is "a *de minimis* hurdle in the disability determination process" requiring a claimant to show only that an impairment has more than a minimal impact on his ability to perform work-related functions. *Id*. at 862. Still, an impairment must be medically determinable, severe, and of sufficient duration or there will be a finding of non-disability. 20 C.F.R. § 404.1520(a)(4)(ii).

Here, the ALJ determined that Plaintiff's cerebral aneurysm/arteriovenous malformation, affective disorder, anxiety disorder, headaches, and seizure disorder were all medically

determinable and severe. (R. 18.) The ALJ did not, however, find that Plaintiff's paresthesia was a medically determinable impairment. Plaintiff argues that this constitutes reversible error. The Court is not persuaded.

First, Plaintiff has not pointed to, and the Court has not found, record evidence demonstrating that Plaintiff's paresthesia met the duration requirement. In particular, the record evidence does not show that Plaintiff's paresthesia lasted for 12 continuous months. Before the April 23, 2018 amended onset date, Plaintiff denied numbness, tingling, or altered sensation (R. 810), focal neurological symptoms (R. 807), arm/leg numbness, and problems with limb coordination (R. 651), and at least one examination found that he had no decreased sensation to touch in his upper and lower limbs (R. 651). For approximately eight months after the April 23, 2018 amended onset date, Plaintiff continued to deny numbness and tingling (R. 553) or arm and leg numbness (R. 660). Examinations also found that Plaintiff's sensation was grossly intact (R. 657), he had no focal motor or sensory deficits (R. 554), and that his sensation was intact to light touch (R. 661).

Indeed, it appears that Plaintiff did not complain about numbness in his right hand and foot until December 17, 2018. (R. 940.) But approximately four months later, on April 4, 2019, Plaintiff was reportedly negative for any neurological symptoms. (R. 576.) Plaintiff subsequently reported numbness and tingling for only several months in 2019. On June 4, 2019, Plaintiff reported that he had numbness in his right hand and foot. (R. 531.) On June 11, 2019, Plaintiff reported that he had numbness on the left side of his face and in his left extremities. (R. 519.) On August 4, 2019, Plaintiff "noted chronic left sided paresthesia" (R. 508), and on August 22, 2019, a sensory examination noted that Plaintiff had bilateral lower extremity tingling, with more symptoms on the left than the right (R. 356). But on August 28, 2019, a neurological

examination found that Plaintiff had no focal neurological deficits; he was negative for pronator drift; he had a normal Babinski sign, and his deep tendon reflexes were all normal. (R. 502.) Plaintiff also did not report numbness or tingling at appointments during the remainder of 2019. (R. 529, 526, 586, 524.)

In 2020, Plaintiff only once reported numbness and tingling. Specifically, during a March 16, 2020 consultative psychological examination, Plaintiff reported that he had numbness and tingling in his left half. (R. 539). He did not report such symptoms at other visits during 2020 (R. 547, 717), and at least one neurological examination in 2020 found that he had no sensory deficits (R. 547). Similarly, Plaintiff reported numbness and tingling on February 22, 2021. (R. 782.) An examination that day found that although Plaintiff had a slight tremor present in both upper extremities, his sensation was intact to light touch, temperature, and proprioception. (R. 788.) On March 12, 2021, however, findings from Plaintiff's neurological examination were within normal limits. (R. 1044–45.)

In short, Plaintiff has not demonstrated, and the Court's independent review of the record does not show that Plaintiff's paresthesia lasted for 12 consecutive months. Accordingly, Plaintiff has failed to demonstrate that it constituted a medically determinable impairment.

The Court further finds that even if the ALJ erred by failing to find that Plaintiff's paresthesia was a medically determinable impairment, any error was harmless. In *Fresquez v. Commissioner of Social Security*, an ALJ failed to discuss the Plaintiff's chronic fatigue syndrome ("CFS") and classify it as a medically determinable impairment at step two. No. 1:18cv114, 2019 WL 1440344, at *1 (S.D. Ohio Mar. 31, 2019). This Court concluded, however, that the ALJ's failure to do so was harmless because the ALJ "continued the sequential analysis through the determination of [the plaintiff's RFC] and the Plaintiff failed to both identify any

functional limitations attributable to her CFS that the ALJ failed to consider and to challenge the ALJ's adverse credibility determination." (*Id*.) (internal quotation omitted).

Such is the case here. The ALJ determined that Plaintiff had at least one medically determinable impairment that was severe and continued the sequential evaluation. But Plaintiff does not point to, and it is not apparent from the record that there are any functional limitations attributable to his paresthesia that the ALJ failed to consider. *See id*.; *see also Rouse v. Comm'r of Soc. Sec.*, No. 2:16–cv–223, 2017 WL 1102684, at *2 (S.D. Ohio Mar. 24, 2017) ("Despite it being better practice [for an] ALJ to say explicitly which impairments are found to be non-severe and which are found to not be medically determinable . . . the plaintiff failed to identify which impairments at issue [had] affected her functioning or limited her ability to work, nor [was] it apparent from the record."). The testifying ME opined that Plaintiff would be capable of only occasionally lifting 20 pounds or frequently lifting 10 pounds; standing or walking for only six hours out of an eight-hour work day; and sitting for only six hours out of an eight-hour work day. (R. 45.) The state agency reviewers found that Plaintiff had the same limits. (R. 80, 91, 103, 113.) And the ALJ incorporated those same limits into Plaintiff's RFC. (R. 22.) In addition, at the April 8, 2021 hearing, Plaintiff testified that he "had numbness in his limbs." (R. 52.) Notably, Plaintiff testified that his numbness caused him issues with standing, but that it did *not* cause him any issues with walking or sitting. (R. 54) The ALJ nevertheless incorporated into Plaintiff's RFC standing limits, as well as additional walking, sitting, position change, and time-off limitations. (R. 22.)

Moreover, Plaintiff has not challenged the ALJ's adverse credibility determination (a.k.a. subjective symptom analysis). 2019 WL 1440344, at *1. For all these reasons, the Court finds

that the ALJ did not commit reversible error at step two and that Plaintiff's contention to the contrary lack merit.

### B. HALLEX and ME Testimony

Plaintiff also contends that the ALJ erred by violating HALLEX I-2-6-70(b), which provides in relevant part:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the ME to review before the ME testifies.

HALLEX I-2-6-70(b), 1993 WL 751901 (S.S.A. June 16, 2016). Plaintiff indicates, and the April 8, 2021 hearing transcript confirms, that the ALJ called two MEs to testify and then dismissed them before Plaintiff testified. (R. 43–47, 47–51, 51–63.) Thus, the ALJ could not summarize Plaintiff's pertinent testimony for the MEs. Plaintiff asserts that this constitutes reversible error. (Pl.'s Statement of Errors 4–7, ECF No. 11.) The Court does not so find.

HALLEX provides "guiding principles, procedural guidance and information to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (internal quotation marks omitted). However, its procedural guidance "is not binding" on the courts. *Id.* at 399; *see also Robberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-00541, 2019 WL 4023549, at *7 (S.D. Ohio Aug. 26, 2019) (internal citations, quotations, and alteration omitted) ("Importantly, HALLEX is an internal guidance tool that does not have the force of law . . . Indeed, HALLEX does not impose judicially enforceable duties on either the ALJ or this Court."). Despite this, some district courts have granted relief where a plaintiff can show that he has been sufficiently prejudiced by an ALJ's failure to follow a HALLEX procedure. *Bailey v. Colvin*, No. CIV.A. 14-104, 2015 WL 428103, at *3 (E.D. Ky.

Jan. 31, 2015) (quoting *Lawrence v. Colvin*, No. 3:13-032-DCR, 2014 WL 640990, *4 (E.D. Ky. Feb. 14, 2014), and citing *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 8, 2013) (collecting cases)); *see also Owens v. Comm'r of Soc. Sec.*, No. 14-14109, 2016 WL 4009751, at *3 (E.D. Mich. July 27, 2016) (finding no reversible error where the plaintiff failed to identified any prejudice flowing from the ALJ's failure to follow HALLEX I-2-7-1).

Plaintiff urges the Court to adopt that minority view. (Pl.'s Statement of Errors 6, ECF No. 11.) The Court declines. The ALJ's failure to follow the procedure set forth in HALLEX I-2-6-70(b) does not constitute reversible error because HALLEX is not binding on this Court. *Bowie*, 539 F.3d at 399.

But even if the Court were to adopt that minority view, Plaintiff has failed to establish that the ALJ's failure to comply with HALLEX I-2-6-70(b) prejudiced him such that relief would be warranted. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Fraley v. Comm'r of Soc. Sec.*, N0. 2:18-cv-1358, 2019 WL 5091959, at *4 (S.D. Ohio Oct. 11, 2019) (quoting *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)), *report and recommendation adopted*, 2019 WL 5799576 (S.D. Ohio Nov. 7, 2019). Plaintiff has not met that burden. His sole arguments are that the MEs could not "have a clear and complete picture" of his impairments without his testimony; his testimony "provided additional insight into the black and white of the medical records;" and the MEs could have "drawn a more precise conclusion" had they heard him testify. (Pl.'s Statement of Errors 6, ECF No. 11.) Plaintiff fails, however, to point to specific information in his testimony that was not also reflected in the records that the MEs reviewed. *See Webber v. Colvin*, No. 2:15-cv-385-JDL, 2016 WL 11372626, at *6–7 (D. Me. May 8, 2016) (explaining that even if the ALJ violated

12

HALLEX I-2-6-70(b), any error was harmless because "the plaintiff [had] not demonstrated how it was outcome-determinative").

Moreover, the ALJ did not simply adopt the limitations opined by the MEs. After the ALJ determined that the MEs' opinions were generally persuasive, he adopted into Plaintiff's RFC the physical limits opined by the medical ME, and he adopted the psychologist's "B criteria" ratings. (R. 25, 26.) The ALJ further concluded that additional restrictions were warranted, however, including additional position changes, time off task, noise, and hazard limitations. (*Id.*) Plaintiff has failed to demonstrate that the ALJ's additional limits failed to accommodate any alleged limitations he may have testified to and about which the MEs were unaware.

In any event, and as Defendant correctly contends, Plaintiff has forfeited this argument. Plaintiff, who was represented by counsel at the hearing, did not request to be permitted to testify before the MEs, did not object to the MEs testifying first, and did not object when the ALJ dismissed the MEs before he testified. (R. 43, 47, 51.) Plaintiff cannot now be heard to complain given his failure to raise these objections when the ALJ was able to address them. *See Lisa D. v. Kijakazi*, No. 8:21cv294, 2022 WL 952778, *4–5, (D. Neb. Mar. 30, 2022) (finding that an ALJ was not required to consider if the plaintiff should have been permitted to testify before MEs testified in the absence of a request to do so or an objection to the order of testimony at the hearing). For all these reasons, the Court finds that the ALJ did not commit reversible error by violating HALLEX I-2-6-70(b) and that Plaintiff's contention to the contrary lack merit.

### C. The VE Testimony

Plaintiff additionally contends that the ALJ erred by mischaracterizing testimony from the VE at step five. (Pl.'s Statement of Errors 7–8, ECF No. 11.) This contention of error lacks merit.

At step five, an ALJ must consider a claimant's RFC, age, education, and work experience to see if the claimant "can make an adjustment to other work." 20 C.F.R. § 405.152(a)(4)(v). If a claimant can do so, then the Commissioner "will find that [the claimant] is not disabled." *Id.* If, however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled. *Id.* The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—*i.e.*, "in the region where [the claimant] lives or in several regions in the country." *Id.* § 404.1560(c)(1). The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant. *Id*. § 404.1560(c)(2).

To meet that burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *See Ealy v. Comm'r of Soc. Sec*, 594 F.3d 504, 516-17 (6th Cir. 2010).

Here, the ALJ relied on the VE's testimony to find that Plaintiff could perform work that existed in significant numbers. (R. 29.) Plaintiff alleges that this was error because the VE

testified that the 15 percent off-task restriction that the ALJ incorporated into his RFC was work preclusive. (Pl.'s Statement of Errors 9–11, ECF No. 11.) Plaintiff is mistaken. The ALJ asked the VE if work could be done by a hypothetical person with Plaintiff's age, education, work experience, and RFC— which included a limitation for being off task 15 percent of the day in addition to normal breaks. (R. 64–65.) The VE testified that such an individual could perform work that existed in significant numbers such as shipping and receiving clerk, mail sorter, and folder and that respectively, there were 78,000, 52,000, and 61,000 of those positions in the national economy. (R. 65.)

Accordingly, the Court finds that the ALJ did not commit reversible error at step five. Plaintiff's contention of error lacks merit.

D. **The Limit to Being Off Task for 15 Percent of a Workday**

Finally, Plaintiff contends that the ALJ erred by finding that he would be off task 15 percent a day. (Pl.'s Statement of Errors 8–9, ECF No. 11.) Specifically, Plaintiff maintains that the ALJ failed to explain why he found that Plaintiff would be off task 15 percent of the work day as opposed to some other amount of time and that the ALJ's failure to provide offer such an explanation prevents review and warrants remand. (*Id*.) This contention of error lacks merit.

Here, no physician found or opined that Plaintiff required a specific time-off-task limitation. Despite that, when assessing the medical ME's testimony, the ALJ determined that he would incorporate into Plaintiff's RFC additional position change, time off task, and noise limit limits due to Plaintiff's headaches. (R. 25.) Plaintiff does not demonstrate, and the Court does not independently discern, how he was prejudiced when the ALJ assessed for him a 15 percent time-off-task limitation. If anything, that limitation benefited Plaintiff.

The Court finds instructive the analysis in *Joy J. v. Com'r of Soc. Sec.*, No. 3:21-cv-15-RGV, 2022 WL 4397530 (N.D. Ga. Sept. 22, 2022). There, as is the case here, no physician opined or found that the plaintiff required a specific time-off-task limitation. *Id*. at *11–12. The plaintiff nevertheless challenged an ALJ's incorporation of a 10 percent time-off-task limit into her RFC. *Id*. at *11. The Court found no error and explained as follows:

> [C]laimant "can point to no physician who imposed any specific percentage of the work day that she would be unable to work" and therefore, the ALJ "could easily have left this restriction out entirely rather than giving [claimant] a generous limitation of [an up to 10%] off-task limitation." *Hall v. Comm'r of Soc. Sec.*, Civil Action No. 15-12904, 2016 WL 8115401, at *9 (E.D. Mich. July 25, 2016); *see also Baker o/b/o Baker v. Berryhill*, 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) (emphasis and citations omitted) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand."). "The inclusion of that restriction . . . only inured to [claimant's] benefit as it necessarily reduced the number of jobs available in the national economy which she could perform." *Hall*, 2016 WL 8115401, at *9. "Because the ALJ afforded [claimant] the benefit of the doubt by including this limitation, the Court finds there is no ground for remand." *Jessica W. v. Comm'r of Soc. Sec.*, Case # 1:20-cv-1209-DB, 2022 WL 345096, at *5 (W.D.N.Y. Feb. 4, 2022) (citations omitted); *see also Brenda S. v. Kijakazi*, No. 1:20-cv-01806-TAB-JRS, 2021 WL 3749048, at *3 (S.D. Ind. Aug. 25, 2021) (citations omitted) (finding that "even if the ALJ erred in not providing an explanation for determining [claimant] would only be off task 10 percent of the workday, this error [did] not require remand, because [claimant] ha[d] not shown any resulting harm," since she did "not cite any evidence that the ALJ allegedly overlooked or failed to consider that would support finding that she needed to be off task more than 10 percent of the time" or "cite to any medical source opining that she would be off task a particular percentage of the workday, and she did not testify with specificity on her need to take breaks" and therefore, claimant failed "to explain how she was harmed by the ALJ's finding that she could be off task 10 percent of the workday over and above normally scheduled breaks").

*Id*. at * 12. The Court is persuaded by this reasoning and reaches the same result here.

16

## V. CONCLUSION

For all the foregoing reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE
